UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TERRANCE PUGH,

           Plaintiff,           Case No. 1:14-cv-525

v.                                             Honorable Gordon J. Quist

JENNIFER GEHUSKI et al.,

           Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Stoddard and Fenby. The Court will serve the complaint against Defendants Dunigan, Hessbrook and Gehuski.

## Discussion

    I.    Factual allegations

      Plaintiff Terrance Pugh presently is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility, though the actions about which he

complains occurred while he was housed at the Carson City Correctional Facility (DRF). He sues the following DRF employees: Warden Cathleen Stoddard[1]; Deputy Warden (unknown) Fenby; Assistant Resident Unit Supervisors (ARUSs) Jennifer Gehuski and Alan Hessbrook; and Resident Unit Manager Jim Dunigan.

According to the complaint, Petitioner arrived at DRF on May 16, 2013. He had been issued a "bottom bunk detail."[2] He was placed in Unit 1200, "a regular working housing unit." (Compl., docket #1, Page ID#7.) Because he continued to have back and knee problems on June 11, 2013, Plaintiff began receiving steroid injections, and he was issued another medical detail for "no more than 3 stairs." (*Id.*) Plaintiff asked on several occasions to be assigned to Unit 500, the "handicapp" unit. (*Id.*) His requests were denied. Plaintiff filed a grievance, which Defendant Dunigan denied at Step I.

During the first week of June 2013, Plaintiff began sharing a cell with Charles Jones, who had just been released from detention, where he had been placed because of fighting. According to Plaintiff, Jones had been convicted of other, prior disciplinary infractions, all issued because of violence. The relationship between the cell-mates rapidly deteriorated. Jones' behavior became increasingly erratic, and, in January 2014, Jones threatened to "butcher" Plaintiff with a shank. (*Id.*, Page ID#8.) Plaintiff approached Defendants Gehoski and Hessbrook every day for two

---

[1] Plaintiff listed the warden of DRF as "John Doe," but, because Cathleen Stoddard serves as warden at DRF, her name has been substituted on the docket sheet (eff. June 30, 2008).

[2] MDOC Policy Directive 04.06.160 ¶ E defines medical details and special accommodation notices as follows:

> Whenever a prisoner is identified as having a medical condition which restricts his/her ability to function adequately in the institutional environment, a qualified health professional shall identify reasonable options available in a corrections setting which will meet the prisoner's special medical need. Options may include prosthetics, medical supplies, assistive devices (e.g., wheelchairs, canes), medical treatment, or restrictions on activities, placement, or housing. Options also may include the issuance of non-wool blankets, extra blankets or sheets, special mattresses, or special shoes. The recommended option(s) shall be set forth on a Medical Detail if expected to be temporary (i.e., six months or less) or on a Special Accommodation Notice if expected to be long-term (i.e., more than six months) or permanent.

- 2 -

weeks, asking to be moved. They told him, "You['re] grown[.] [A]ct like it[.] I[']m not moving you." (*Id.*) Or they stated, "500 is full." (*Id.*) During Dunigan's rounds, Plaintiff asked Dunigan to move him. Dunigan allegedly replied, "Look at your worldly room[.] I[']d want to do something to you. Learn to clean your room, first." (*Id.*)

On February 14, 2014, Plaintiff and Jones had an argument. Jones punched Plaintiff multiple times before meal time and then threatened that he would stab Plaintiff once they were outside. Out of fear, Plaintiff hit Jones with a lock. Both Plaintiff and Jones were placed in segregation for fighting.

Plaintiff filed a grievance, alleging that Defendants' multiple refusals to grant his requests to be moved placed him at substantial risk of serious injury from Jones. Dunigan allegedly laughed off Plaintiff's grievance. On March 25, 2014, Plaintiff received a denial of his grievance. In the grievance determination, Defendant Gehoski was quoted as saying that Plaintiff had only asked for a transfer to Unit 500, not for protection. Gehoski also stated that Plaintiff's medical details were either not noted on his transfer into the unit or they had been denied by DRF healthcare. Plaintiff appealed the grievance.

Plaintiff claims that all Defendants were deliberately indifferent to the substantial risk of serious injury he faced from the denial of his transfer to accommodate his medical details and to prevent injury from Jones. For relief, Plaintiff seeks compensatory and punitive damages.

II.   <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

- 3 -

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make specific factual allegations against Defendants Stoddard and Fenby, other than his claim that they failed to supervise their subordinates or failed to resolve his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d

484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Stoddard and Fenby engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff's allegations against Defendants Dunigan, Hessbrook and Gehuski are sufficient to warrant service of the complaint.

II.     Motion Seeking Temporary Relief

Plaintiff has filed a motion for temporary relief and damages (docket #3). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal*, 467 F.3d at 1009.

Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his Eighth Amendment claim. Although Plaintiff's allegations are sufficient to warrant service of the complaint, it appears at this preliminary stage that Plaintiff's likelihood of success on his claims is low.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Since the events in question, Plaintiff has been transferred to a different prison facility. Plaintiff therefore remains at no risk from the Defendants he has sued. As a result, Plaintiff cannot show an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of

extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.  *See Glover*, 855 F.2d at 286-87.  That showing has not been made here.  Accordingly, Plaintiff's motion for preliminary relief will be denied.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Stoddard and Fenby will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Dunigan, Hessbrook and Gehuski.  Plaintiff's motion seeking preliminary relief will be denied.

An Order consistent with this Opinion will be entered.


Dated:  June 19, 2014                                                      /s/ Gordon J. Quist
                                                                                            GORDON J. QUIST
                                                                                  UNITED STATES DISTRICT JUDGE