UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRANCE PUGH,

        Plaintiff,

Case No. 1:14-cv-525

Hon. Gordon J. Quist

v.

JENNIFER GEHUSKI, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendants' motion for summary judgment (docket no. 28).

    **I.**    **Plaintiff's complaint**

The Court previously summarized plaintiff's claims as follows:

    Plaintiff Terrance Pugh presently is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility, though the actions about which he complains occurred while he was housed at the Carson City Correctional Facility (DRF). He sues the following DRF employees: Warden Cathleen Stoddard [FN 1]; Deputy Warden (unknown) Fenby; Assistant Resident Unit Supervisors (ARUSs) Jennifer Gehuski and Alan Hessbrook; and Resident Unit Manager Jim Dunigan.

    According to the complaint, Petitioner arrived at DRF on May 16, 2013. He had been issued a "bottom bunk detail." [FN 2] He was placed in Unit 1200, "a regular working housing unit." (Compl., docket #1, Page ID#7.) Because he continued to have back and knee problems on June 11, 2013, Plaintiff began receiving steroid injections, and he was issued another medical detail for "no more than 3 stairs." (*Id.*) Plaintiff asked on several occasions to be assigned to Unit 500, the "handicapp" unit. (*Id.*) His requests were denied. Plaintiff filed a grievance, which Defendant Dunigan denied at Step I.

During the first week of June 2013, Plaintiff began sharing a cell with Charles Jones, who had just been released from detention, where he had been placed because of fighting. According to Plaintiff, Jones had been convicted of other, prior disciplinary infractions, all issued because of violence. The relationship between the cell-mates rapidly deteriorated. Jones' behavior became increasingly erratic, and, in January 2014, Jones threatened to "butcher" Plaintiff with a shank. (*Id.*, Page ID#8.) Plaintiff approached Defendants Gehoski and Hessbrook every day for two weeks, asking to be moved. They told him, "You['re] grown[.] [A]ct like it[.] I[']m not moving you." (*Id.*) Or they stated, "500 is full." (*Id.*) During Dunigan's rounds, Plaintiff asked Dunigan to move him. Dunigan allegedly replied, "Look at your worldly room[.] I[']d want to do something to you. Learn to clean your room, first." (*Id.*)

On February [16], 2014, Plaintiff and Jones had an argument.[1] Jones punched Plaintiff multiple times before meal time and then threatened that he would stab Plaintiff once they were outside. Out of fear, Plaintiff hit Jones with a lock. Both Plaintiff and Jones were placed in segregation for fighting.

Plaintiff filed a grievance, alleging that Defendants' multiple refusals to grant his requests to be moved placed him at substantial risk of serious injury from Jones. Dunigan allegedly laughed off Plaintiff's grievance. On March 25, 2014, Plaintiff received a denial of his grievance. In the grievance determination, Defendant Gehoski was quoted as saying that Plaintiff had only asked for a transfer to Unit 500, not for protection. Gehoski also stated that Plaintiff's medical details were either not noted on his transfer into the unit or they had been denied by DRF healthcare. Plaintiff appealed the grievance.

Plaintiff claims that all Defendants were deliberately indifferent to the substantial risk of serious injury he faced from the denial of his transfer to accommodate his medical details and to prevent injury from Jones. For relief, Plaintiff seeks compensatory and punitive damages.

Opinion (docket no. 11, PageID.43-44) (internal footnotes omitted).

The Court dismissed defendants' Stoddard and Fenby for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c).

---

[1] The Opinion screening plaintiff's complaint appears to contain a typographical error stating that "[o]n February 14, 2014, Plaintiff and Jones had an argument." Opinion (docket no. 11, PageID.44). The Complaint gives the date of the argument (and physical altercation) as February 16, 2014. Compl. (docket no. 1, PageID.8).

*See* Opinion and Order (docket nos. 11-12). Plaintiff's Eighth Amendment claims against defendants Gehuski, Dunigan and Hessbrook remain pending before the Court.

### II.  Defendants' motion for summary judgment

### A.  Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**B.     Failure to Exhaust**

**1.     Exhaustion requirement**

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not

receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff failed to properly exhaust his claims prior to filing this action

The record reflects that plaintiff exhausted four grievances while incarcerated at DRF. *See* MDOC Step III Grievance Report (docket no. 29-3, PageID.111-117). Three of those grievances are unrelated to the present action. *See* DRF 13-06-1312-28(b) (grievance with incident date of June 18, 2013 which threatened civil litigation related to rejection of a magazine in the mail room) (*id.* at PageID.127-138); DRF 13-08-1834-17g (grievance with incident date of August 26, 2013 which threatened civil litigation related to alleged destruction of property during a cell search) (*id.* at PageID.122-126); and DRF 13-09-1936-27b (grievance with incident date of September 6, 2013 related to policy by which plaintiff was removed from indigent status) (*id.* at PageID.118-121).

The record reflects that one grievance, DRF-14-03-0457-03b ("457"), addressed some of the issues raised in plaintiff's complaint. *See* Grievance No. 457 (docket no. 29-4, PageID.142). This grievance listed an incident date of February 16, 2014, and was directed against defendants Gehuski and Hessbrook claiming: (1) that for about two weeks plaintiff had requested defendants Gehuski and Hessbrook to move him to the 500 wing due to a handicap but Gehuski refused to move him; (2) that on February 16, 2014 plaintiff's bunkie punched him before chow and threatened to stab [?] him outside; (3) that plaintiff attacked his bunkie "out of fear"; (4) that "all of this could have been avoided" if Gehuski and Hessbrook had moved plaintiff to the correct unit ("handicap, 500"); and that Gehuski and Hessbrook's "wanton actions" left plaintiff "no choice but to file civil

litigation." *Id.* The record reflects that plaintiff did not exhaust this grievance until August 8, 2014, nearly four months after filing this action. *See* MDOC Step III Grievance Report at PageID.112.

The PLRA provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. Thus, a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999). Here, the uncontested record establishes that plaintiff did not properly exhaust Grievance no. 457 prior to filing his complaint contrary to § 1997e(a). *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91; *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. Rather he exhausted this grievance during the pendency of the suit. *See Freeman*, 196 F.3d at 645. Accordingly, defendants' motion for summary judgment should be granted.[2]

### IV. Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (docket no. 28) be **GRANTED** and that this action be terminated.


Entered: November 20, 2015            /s/ Ray Kent
                                      RAY KENT
                                      United States Magistrate Judge

---

[2] Because plaintiff did not meet the threshold requirement of exhaustion prior to filing this action, the undersigned has not addressed defendants' arguments with respect to the merits of plaintiff's claims.

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).